# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| ATLANTIC CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:21-CV-194-JPK |
| | ) | |
| RIGHT WAY AUTO SALES, LLC; OMAR ALTAHARWAH; and RODNEY STATON, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Atlantic Casualty Insurance Company ("Atlantic Casualty") filed this declaratory judgment action against Defendants Right Way Auto Sales, LLC, Omar Altaharwah, and Rodney Staton. Atlantic Casualty seeks to establish that its potential liability under an insurance policy it issued to Right Way (the "Policy") for injuries sustained by Staton and allegedly caused by Altaharwah (Right Way's employee) is limited to $25,000 rather than the $350,000 amount shown on the Declarations page. Staton filed a lawsuit in Indiana state court against Altaharwah and Right Way to recover for his injuries, and that suit was pending when Atlantic Casualty filed this federal action. Currently before the Court is Staton's Motion To Dismiss Plaintiff's Complaint For Declaratory Relief (the "Motion") (DE 20), seeking dismissal of Atlantic Casualty's complaint on jurisdictional grounds, or, in the alternative, asking the Court to abstain from the case. The parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final

judgment in this case. *See* (DE 24). Accordingly, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c). For the reasons explained below, Staton's Motion is denied, but the denial is without prejudice to Staton raising as a defense in later proceedings (such as in response to a summary judgment motion brought by Atlantic Casualty for a declaration interpreting the Policy) that a ruling by the Court would be inappropriate because it would resolve a factual dispute at the heart of the state court litigation.

## BACKGROUND[1]

### 1.  THE ACCIDENT

Right Way is in the business of buying pre-owned automobiles, repairing them as necessary, and then reselling them. As an employee of Right Way, Altaharwah's primary job duties include transporting vehicles, usually to and from the place of purchase, or to and from any mechanics or repair shops needed to ready the car for resale. From time to time, Altaharwah also makes trips to purchase parts and other supplies. On April 3, 2019, Altaharwah had parked a 2016 Chevrolet Equinox in the process of being readied for resale near the front of the dealership lobby. The 2016 Chevrolet Equinox had a license tag on it because Altaharwah had recently driven it from the mechanic shop back to the dealership.

---

[1] The facts stated herein are taken mostly from the state court documents submitted by Staton in support of his Motion. They are presented for background purposes only, without representation or finding as to their accuracy. *See Day v. Union Mines Inc.,* 862 F.2d 652, 657 n.2 (7th Cir. 1988) (court can take judicial notice of pending state court pleadings and other papers).

Two other people were present at the dealership on April 3, 2019 in addition to Altaharwah: (1) Mohammed Musleh, another employee of Right Way and the brother of Hasan Musleh, Right Way's owner; and (2) Nizar Musleh, who is Hasan's and Mohammed's father and was at the dealership visiting his son.[2] Nizar is a diabetic, and he suddenly began experiencing an episode of low blood sugar, causing him to lose consciousness. Mohammed and Altaharwah witnessed Nizar's physical distress, and immediately thought they needed to get him to the hospital. Together, they carried Nizar to the 2016 Chevrolet Equinox because it was the vehicle closest to the front door that was equipped with license plates making it legal to operate. Mohammed got in the back seat with his father, and Altaharwah jumped in the driver's seat. On the way to the hospital, Altaharwah ran through a red light and struck a pick-up truck being driven by Staton. The truck flipped on its side, and Staton sustained significant bodily injuries.

## 2    THE PENDING STATE COURT LITIGATION

On May 21, 2019, Staton filed the underlying state court litigation to recover monetary damages for the injuries he sustained in the accident. The state court complaint originally named only Altaharwah, but Staton later filed an amendment alleging that Right Way was liable for the injuries caused by Altaharwah under principles of respondeat superior liability or, in the alternative, pursuant to the doctrine of negligent entrustment. Staton represents that, as the insurer of Right Way with potential liability

---

[2] To avoid confusion, going forward the Court will refer to Hasan Musleh, Mohammed Musleh, and Nizar Musleh by their first names.

under the Policy for Staton's claims, Atlantic Casualty is currently paying defense costs in the state court action for both Right Way and Altaharwah.

On December 5, 2019, Right Way filed a motion for summary judgment in the state action arguing for judgment as a matter of law on both the respondeat superior and negligent entrustment claims. As to Staton's claim against Right Way for respondeat superior liability, Right Way argued that the undisputed facts showed that Altaharwah was using the 2016 Chevrolet Equinox for a personal matter when the accident occurred, and therefore he was not acting within the scope of his employment. On November 19, 2020, the state court denied Right Way's motion in a summary order that includes no explanation of the court's ruling. (DE 21-1). The order includes a certification for interlocutory appeal, but the parties have not indicated that one was taken. Trial in the state court litigation is scheduled to begin in August 2022.

### 3.   THIS DECLARATORY JUDGMENT ACTION

On June 11, 2021, Atlantic Casualty filed this declaratory judgment action. The complaint asserts diversity as the basis for federal court subject matter jurisdiction. *See* 28 U.S.C. § 1332(a). The allegations are barebones, providing a brief description of the Policy, the accident, and the pending state court litigation, and then alleging, in a conclusory manner, that "there exists a present and existing controversy between the parties concerning the insurance coverage limits available for Staton's claims arising out of the April 3, 2019 automobile collision." (DE 1 ¶ 10). The Prayer for Relief requests a judgment declaring that the Policy provides coverage limits of $25,000 for the claims made by Staton against Right Way and Altaharwah. (*Id.* at 3). The sole factual allegation in support

4

of that requested relief is the allegation that, although "[t]he Policy provides general coverage limits" of $350,000 for "Covered Autos Liability" and "General Liability Bodily Injury and Property Damage Liability" coverage, "given the circumstances giving rise to the automobile collision between Staton and Altaharwah and under the terms and limitations of the Policy," the Policy provides liability coverage limits for Staton's claims in the amount of $25,000. (*Id.* ¶ 9 ). Neither a description of the "circumstances giving rise to the automobile collision" nor citation to the "terms and limitations of the Policy" referenced in the allegation is provided.

### 4.   THE POLICY

The Policy issued by Atlantic Casualty to Right Way[3] provides "Covered Autos Coverages" (Section I) (DE 1-1 at 47) up to $350,000 per accident, as well as "General Liability Coverages" (Section II) (*id.* at 57) also up to $350,000 per accident. *See* (*id.* at 5 (Declarations Page).

Under the "Covered Autos Coverages" provision, Atlantic Casualty promised to pay "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of covered 'autos'" (*id.* at 48 (Section I, D(1)), up to the $350,000 limit (*id.* at 52 (Section I, D(5))). The term "covered autos" is defined to

---

[3] The Policy is attached to the complaint, and thus its contents "become part of the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

include: (1) "Owned 'Autos' Only"[4]; and (2) "Non-owned 'Autos' Used In Your 'Auto'

Dealership"[5]. *See* (*id.* at 47 (Section 1, A); *id.* at 5 (Declarations Page designating Code 22

and 29 for covered autos liability coverage). The term "insured" is defined to include

(a) "You[6] for any covered 'auto'"; (b) "Anyone else while using with your permission a

covered 'auto,'" with certain exceptions[7]; (c) "Anyone liable for the conduct of an insured

described above but only to the extent of that liability"; and (d) "Your 'employee' while

using a covered 'auto' you do not own, hire or borrow in your business or your personal

affairs." (*Id.* at 49 (Section I, D(2)).

Under the "General Liability Coverages" provision, Atlantic Casualty promised to

pay "all sums an insured legally must pay as damages because of 'bodily injury' or

'property damage' to which this insurance applies caused by an 'accident' and resulting

from your 'auto dealer operations' other than the ownership maintenance or use of

---

[4] "Owned 'Autos' Only" coverage includes "[o]nly those 'autos' you own … includ[ing] those 'autos' you acquire ownership of after the policy begins." (DE 1-1 at 47 (Code 22)).

[5] "Non-owned 'Autos' Used In Your 'Auto' Dealership" includes "[a]ny 'auto' you do not own, lease, hire, rent or borrow used in connection with your 'auto' dealership described in the Declarations. This includes 'autos' owned by your 'employees' or … members (if you are a limited liability company) or members of their households while used in your 'auto' dealership." (DE 1-1 at 47 (Code 29)).

[6] "You" is the insured, which is Right Way.

[7] The exceptions include: "(1) The owner or anyone else from whom you hire or borrow a covered 'auto'" …. (2) Your 'employee' if the covered 'auto' is owned by that 'employee' or a member of his or her household. (3) Someone using a covered 'auto' while he or she is working in a business of selling, servicing or repairing 'autos' unless that business is yours. (4) Your customers [with some further exceptions to the exception]." (DE 1-1 at 49 (Section I, D(2)).

'autos'" (*id.* at 57 (Section II, A(1)), up to the $350,000 limit (*id.* at 65 (Section II, F). "Auto dealer operations" is defined as "the ownership, maintenance or use of locations for an 'auto' dealership and that portion of the roads or other accesses that adjoin these locations," including "all operations necessary or incidental to an 'auto' dealership." (*Id.* at 71 (Section V, E). For purposes of General Liability Coverages, the "insured" is defined in relevant part to include: "(1) You. … (3) Your members, if you are a limited liability company, but only with respect to the conduct of your 'auto dealer operations.' . . . . (5) Your 'employees' . . . , but only for acts within the scope of employment by you or while performing duties related to the conduct of your 'auto dealer operations.'" (*Id.* at 64 (Section II, D).

The Court was unable to find a reference anywhere in the Policy to a $25,000 liability limit. An Endorsement to the Policy, however, states that "[l]iability [l]imits are reduced to the financial responsibility limit of the state where the 'accident' occurs if the driver is not shown in the Schedule above." (*Id.* at 42). The only name that appears on the Schedule is the name of Right Way's owner, Hasan Musleh. (*Id.*). Presumably "the financial responsibility limit" in Indiana is $25,000, although nowhere in the current record is a source cited for the $25,000 amount that would allow the Court to verify that presumption.

## DISCUSSION

### I.   SUBJECT MATTER JURISDICTION

The Declaratory Judgment Act does not supply the court with subject matter jurisdiction. *Manley v. Law*, 889 F.3d 885, 893 (7th Cir. 2018). Instead, there must be an

independent jurisdictional basis for this suit,[8] which, according to Atlantic Casualty, is diversity of citizenship. For the Court to have subject matter jurisdiction under 28 U.S.C. § 1332(a), no defendant may be a citizen of the same state as the plaintiff, and the amount in controversy must be more than $75,000. The complaint alleges that Atlantic Casualty is incorporated in North Carolina, with its principle place of business in Greensboro, North Carolina, and that, therefore, Atlantic Casualty is a citizen of North Carolina.[9] Staton and Altaharwah are alleged to be citizens of Indiana,[10] while Right Way, a limited liability company, is also alleged to be a citizen of Indiana because Hasan, its only member, is a citizen of Indiana.[11] In short, the complaint alleges complete diversity because Atlantic Casualty is a citizen of North Carolina and all defendants are citizens of Indiana.

---

[8] *See Kelly v. Maxum Specialty Ins. Grp.,* 868 F.3d 274, 282 n. 4 (3d Cir. 2017) ("Although courts often refer to a court's 'jurisdiction' under the [Declaratory Judgment Act], the statute is not a jurisdictional grant. Rather, the Supreme Court has characterized the [Declaratory Judgment Act] as procedural, affording a remedial option in a case over which a court must have an independent basis for exercising jurisdiction." (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950))).

[9] (DE 1 ¶ 1); *see N. Trust Co. v. Bunge Corp.,* 899 F.2d 591, 594 (7th Cir. 1990) (corporations "are deemed to be citizens of the state in which they are incorporated and the state in which they have their principal place of business" (citing 28 U.S.C. § 1332(c)(1)).

[10] (DE 1 ¶¶ 3-4); *see Heinen v. Northrop Grumman Corp.,* 671 F.3d 669, 670 (7th Cir. 2012) (citizenship of an individual "depends on domicile--that is to say, the state in which a person intends to live over the long run").

[11] (DE 1 ¶ 2; DE 7 ¶ 2); *see Thomas v. Guardsmark, LLC,* 487 F.3d 531, 534 (7th Cir. 2007) (limited liability company is a citizen of each state where any of its members are citizens).

Staton does not dispute that at least $75,000 is in controversy,[12] nor does he dispute the complaint's allegations regarding the citizenship of each of the parties. Instead, Staton argues that "[t]he direct-action proviso contained in 28 U.S.C. § 1332(c)(1) makes an insurer a citizen of the state in which its insured is a citizen." (DE 26 at 2-3). In the alternative, Staton asserts that the Court should realign Right Way from defendant to

---

[12] Right Way and Altaharwah, however, apparently do dispute that the amount in controversy requirement for federal court diversity jurisdiction is satisfied here. In their joint answer, they allege as an Affirmative Defense "[t]hat the amount in controversy is below the threshold limits for matters . . . in the federal courts and the Complaint should be dismissed as a result." (DE 17, Affirmative Defense ¶ 8; *see also id.,* Jurisdiction,¶ 5 (denying the complaint's allegation that the requirements of 28 USC § 1332 are satisfied)). Although Right Way and Altaharwah are defendants in this action, neither have weighed in on Staton's Motion. Nor have they raised the amount in controversy issue pled in their answer through any separate filing. Nevertheless, the Court has "an independent duty to ensure subject-matter jurisdiction." *Dexia Credit Local v. Rogan*, 602 F.3d 879, 883 (7th Cir. 2010). The rule for determining the amount in controversy in an insurance coverage situation is that, "'[w]here an insurer denies his obligations under a liability insurance policy on the theory * * * that the accident was not within the coverage of the policy * * * the amount in controversy is measured by the injured third-party's bona fide claim against the insured, unless this exceeds the maximum limit of the policy, in which event the amount in controversy is the maximum limit of the insurer's liability under the policy.'" *Motorists Mut. Ins. Co. v. Simpson*, 404 F.2d 511, 515 (7th Cir. 1968) (quoting 6A J. Moore, Federal Practice P57.23, at 3137-8 (2d ed. 1966)); *see also Am. Standard Ins. Co. of Wis. v. Rogers,* 123 F. Supp. 2d 461 (S.D. Ind. 2000) ("In disputes regarding the applicability of an insurance policy to a particular occurrence, the amount in controversy is the value of the underlying claim." *Id.* at 463 (citing 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3710 (3d ed. 1998))). This rule holds true even where the insured's liability for the third party's injuries has not yet been established. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 539 (7th Cir. 2006). That is, if the *potential* outlay for indemnity exceeds the jurisdictional limit--and it does here, because the maximum amount for which Atlantic Casualty potentially could be held liable under the Policy is $350,000--the amount in controversy requirement is satisfied. *Id.* Additionally, even if the $25,000 that all seem to agree is the minimum coverage is subtracted from the $350,000 maximum amount, the jurisdictional amount is still easily met.

9

plaintiff, according to its true interest in the litigation. (*Id.* at 4-5). If either theory is correct, there would not be complete diversity between all plaintiffs and all defendants, because Right Way, like Staton and Altaharwah, is a citizen of Indiana.[13]

## A.   SECTION 1332(c)(1)

Section 1332(c) provides in relevant part that "in any direct action against the insurer of a policy or contract of liability insurance . . . to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of … every state and foreign state of which the insured is a citizen." 28 U.S.C. § 1332(c)(1)(A). As the Supreme Court has explained:

> Congress added the proviso to § 1332(c) in 1964 in response to a sharp increase in the caseload of Federal District Courts in Louisiana resulting largely from that State's adoption of a direct action statute. The Louisiana statute permitted an injured party to sue the tortfeasor's insurer directly without joining the tortfeasor as a defendant. Its effect was to create diversity jurisdiction in cases in which both the tortfeasor and the injured party were residents of Louisiana, but the tortfeasor's insurer was considered a resident of another State. Believing that such suits did "not come within the spirit or the intent of the basic purpose of the diversity jurisdiction of the Federal judicial system," Congress enacted the proviso "to eliminate under the diversity jurisdiction of the U.S. district courts, suits on certain tort claims in which both parties are local residents, but which, under a State 'direct action' statute, may be brought directly *against* a foreign

---

[13] Staton raised these issues for the first time in his reply brief. Atlantic Casualty filed a motion to strike on the ground that it was inappropriate to raise new arguments in reply. (DE 28). Defects in subject matter jurisdiction, however, may not be waived or forfeited. *See, e.g., Sadat v. Mertes*, 615 F.2d 1176, 1188 (7th Cir. 1980). Accordingly, the Court allowed Atlantic Casualty to file a surreply in lieu of striking Staton's reply brief. (DE 29).

> insurance carrier without joining the local tort-feasor as a
> defendant."

*Northbrook Nat'l Ins. Co. v. Brewster*, 493 U.S. 6, 9-10 (1989) (emphasis in original) (citations omitted; quoting Senate Report No. 1308).

The "direct action" provision, on its face, does not apply here. First, this suit is brought *by* the insurer, Atlantic Casualty, whereas the statute requires that the suit be "*against* the insurer." Second, the insured, Right Way, is a named defendant, whereas the statute requires that the action in question be one "to which the insured is not joined as a party-defendant." Nevertheless, Staton urges the Court to reject what he calls a "simplistic interpretation of the direct-action proviso." (DE 26 at 3). Instead, he argues that "authority . . . exist[s] to support application of the direct-action proviso to insurer-initiated direct actions such as this one, which are known as reverse direct actions." (*Id.*).

The only "authority" Staton cites for applying § 1332(c) to a "reverse direct action" is a 1977 decision of the Fifth Circuit--*Campbell v. Insurance Co. of North America*, 552 F.2d 604 (5th Cir. 1977) (per curiam). *See* (DE 26 at 3).[14] In *Campbell*, the injured party sued the insurer of his employer and won an award from the state workers' compensation board. 552 F.2d at 604. The insurer appealed the board's decision to the federal court on the basis of diversity of citizenship. *Id.* The Fifth Circuit applied § 1332(c) in determining whether diversity jurisdiction existed, finding that the insurer was a citizen of the state where its insured was a citizen. *Id. Campbell* is similar to this case in the sense that the insurer there

---

[14] Staton also cites dicta in a 1967 Louisiana district court case that he claims supports his "reverse direct action" theory. (DE 26 at 3).

was the party that initiated the lawsuit against the injured party in federal court. Based on a similar alignment of the parties--i.e., the insurer (Atlantic Casualty) has sued the injured party (Staton)--Staton asserts that this case, like *Campbell*, is a "reverse direct action." However, Staton's definition of a "reverse direct action"--i.e., any declaratory judgment action by an insurer "to decide all potential liability issues arising out of a particular incident" (DE 26 at 3)--is overly broad.

To understand what a "reverse direct action" is, one must first understand what a direct action is. Under the view that "prevails in this circuit, . . . the substance of the action," rather than the alignment of the parties, "is what matters" for determining whether an action is a direct action. *Runk v. United Fire & Cas. Co.,* No. 4:09 CV 43, 2009 WL 3256806, at *3 (N.D. Ind. Oct. 7, 2009). Not just *any* lawsuit that relates to potential liability issues arising out of a particular incident qualifies. Rather, a direct action is a suit brought by an  injured party *to establish that the alleged tortfeasor caused the injuries in question*, but instead of suing the alleged tortfeasor, the injured party sues only the insurer of the alleged tortfeasor. *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 682 (7th Cir. 1992).[15] A "reverse direct action," then, would be a suit brought by the insurer of the

---

[15] *See also Ind. Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 317 (7th Cir. 1998) ("Section 1332(c)(1) creates a special rule for insurers in 'direct actions'--that is, cases in which a person with a claim against the insured sues the insurer directly."); *Demanes v. Aurora Nat'l Life Assurance Co.*, No. 17-cv-1047, 2017 WL 7803764, at *2 (C.D. Ill. Apr. 5, 2017) ("a direct action is where a party who suffered damage for which the insured is legally responsible brings suit against the insured's 'liability insurer without joining the insured or first obtaining judgment against the legally responsible party'" (quoting *Camelback Props. v. Phoenix Ins. Co.*, No. 10 C 01467, 2010 WL 2402929, at *2 (N.D. Ill. June 15, 2010))).

alleged tortfeasor against the injured party for purposes of establishing that its insured, the alleged tortfeasor, was not responsible for the injured party's injuries. *See, e.g., Campbell,* 552 F.2d 604.

Indiana does not allow direct actions against insurance companies. *See, e.g., Runk*, 2009 WL 3256806, at *4 (citing case law).[16] Thus, Staton could not have named Atlantic Casualty as a defendant in the underlying state litigation in which he seeks to establish that Right Way was responsible for his injuries. But had Staton sued Atlantic Casualty to establish the liability limits under the Policy, that lawsuit would *not* have been a direct action. *See Runk,* 2009 WL 3256806, at *4 (quoting *State Farm Mut. Auto. Ins. Co. v. Estep*, 873 N.E.2d 1021, 1026 n. 10 (Ind. 2007) ("[w]here the plaintiff is not suing the insurance company to establish that its insured committed a tort against the plaintiff, but rather is suing to establish whether the insurer can deny coverage or whether the insurance policy remained in effect, such suit is not a direct action against an insurer" (internal quotation marks and citation omitted))); *see also Bankers Tr.,* 959 F.2d at 682 ("Bankers Trust is not suing Old Republic to establish that LKA committed a tort against Bankers Trust, but only to establish that Old Republic's insurance policy remains in force up to the policy limits. Such a suit is not a direct action suit against an insurer."). This action is the

---

[16] The reason most states do not "permit the victim of an insured injurer to sue the injurer's liability insurer directly . . . is to protect the insurance company from the hostility of juries." *Bankers Tr.,* 959 F.2d at 682; *see Miller v. Alvey,* 246 Ind. 560, 568, 207 N.E.2d 633, 637 (1965) ("Decisions of this state recognize the rule that in an action for damages growing out of an automobile accident evidence as to insurance carried by the defendant is ordinarily inadmissible not only because it is irrelevant but because it tends to prejudice the jury against the defendant.").

"reverse" of that hypothetical lawsuit. Because Atlantic Casualty does *not* seek a declaration in this lawsuit regarding Right Way's liability for Staton's injuries, this action is not a "reverse direct action."

Aside from the fact that *Campbell* is irrelevant because this case is *not* a "reverse direct action," more importantly, the Fifth Circuit's decision is not binding and has been rejected by the United States Supreme Court. In *Campbell,* the Fifth Circuit held that, for purposes of applying § 1332(c), the distinction between an action brought *by* an insurer and one brought *against* an insurer was "without a difference." 552 F.2d at 605. In either case, the Fifth Circuit reasoned, the same "policy considerations" applied. *Id.* Therefore, the Fifth Circuit held that § 1332(c) applied equally to an action brought by an insurer, notwithstanding that the statutory language refers only to actions brought "*against* an insurer." *Id.* But the United States Supreme Court later addressed the same factual circumstances where the insurer brought an action against its insured's employee challenging an award of workers' compensation benefits. *See Northbrook Nat'l,* 493 U.S. at 7. In resolving the question of whether § 1332(c) applied to the case, the Supreme Court stated that "[t]he language of the proviso could not be more clear. It applies only to actions *against* insurers; it does not mention actions *by* insurers." *Id.* at 9 (emphasis in original)). The Supreme Court's holding in *Northbrook National* that the direct action proviso does not apply to so-called "reverse" direct actions where the insurer is the plaintiff bringing the action has been consistently applied by lower courts for more than two decades. *See, e.g., Metropolitan Life Ins. Co. v. Estate of Cammon,* 929 F.2d 1220, 1223 (7th Cir. 1991) ("Yet this is not an action 'against the insurer'; Metropolitan Life is the

14

plaintiff, which makes all the difference.").[17] In short, not only does Staton fail to specifically address the concept of a direct action as discussed previously, he also fails to distinguish Supreme Court precedent that contradicts his "reverse direct action" argument.[18]

### B. REALIGNMENT

"Where jurisdiction is based on diversity of citizenship, the court may ascertain whether the alignment of the parties as plaintiff and defendant conforms with their true interests in the litigation." *Am. Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 149 (7th Cir. 1981) (citing *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63 (1941)). Staton's argument for realignment focuses solely on the shared interests of Atlantic Casualty and Right Way in a ruling in Right Way's favor on the issue of respondeat superior liability. Staton argues:

> Should it be held that Right Way's employee, Omar Altaharwah, was using the Right Way vehicle for personal use, Right Way will not be vicariously liable for his actions . . . . Thus, both Right Way and [Atlantic Casualty] desire to have this Court declare that Omar was using the Right Way vehicle for his own personal use.

---

[17] *See also Rehkemper & Son, Inc. v. Ind. Lumbermens Mut. Ins. Co.*, No. 09-cv-858-GPM, 2010 WL 547167, at *2 n.2 (S.D. Ill. Feb. 10, 2010) (noting that § 1332(c)(1) does not apply to suits between an insurer and an insured); *Grinnell Select Ins. Co. v. Glodo*, No. 08-cv-891-JPG, 2009 WL 455126, at *3 (S.D. Ill. Feb. 23, 2009) ("suit by judgment creditor of insured against insurer is not a direct action); *Spence v. Regions Hosp.*, No. 04-C-0756-C, 2005 WL 79013, at *1 (W.D. Wis. Jan. 5, 2005) (holding that § 1332(c)(1) applies only to actions brought against the insurer, not actions by insurers); *Karonis Enters., Inc. v. Commercial Union Ins. Co.*, No. 94 C 1092, 1994 WL 722025, at *2 (N.D. Ill. Dec. 29, 1994) ("A suit by an insured against its insurer is not a direct action within the meaning of § 1332(c)(1).").

[18] Staton states twice in his reply brief that, out of "full candor to this court" he admits that "contrary authority" exists to his "reverse direct action" argument. (DE 26 at 3, 4).

(DE 26 at 5).

Staton's focus on the shared interest as to the respondeat superior issue ignores the Seventh Circuit's "long-standing precedent that realignment is not proper where an 'actual, substantial' controversy exists between the parties, *even if the parties share an interest in avoiding liability in the suit.*" *Wolf v. Kennelly*, 574 F.3d 406, 412 (7th Cir. 2009) (emphasis added). In *American Motorists*, the Seventh Circuit explained that in determining whether realignment is proper, courts must focus on "the points of substantial antagonism, not agreement." 657 F.2d at 151. This holds "true even if the parties share[ ] an interest in avoiding liability in the suit altogether. '[A] mere mutuality of interest in escaping liability' does not mandate realignment." *Wolf*, 574 F.3d at 412 (quoting *Am. Motorists*, 657 F.2d at 151). The Seventh Circuit "ultimately concluded that realignment was not proper in [*American Motorists*] because while the plaintiff insurance company and a defendant insurance company both had an interest in escaping liability for *any* claims, the dispute over their respective duties to defend was a real and substantial controversy that justified placing the parties on opposite sides of the dispute." *Id.* (emphasis in original). Seventh Circuit case law thus firmly establishes that it is "undoubtedly improper" to realign parties if "an actual, substantial controversy exists between a party on one side of the dispute and its named opponent." *Krueger v. Cartwright*, 996 F.2d 928, 932 n. 5 (7th Cir. 1993).[19]

---

[19] "*American Motorists* is a minority view among the circuits," with the "the majority of circuits" having adopted a different test for realignment known as the "primary purpose" test. *Wolf*, 574 F.3d at 413.

This lawsuit involves an actual and substantial controversy[20] between Atlantic Casualty and its insured, Right Way, specifically, as to the $350,000 limitation on liability under the Policy and whether that limit applies, or is reduced to $25,000 in the circumstances of the underlying accident. With respect to the limits of liability issue that Atlantic Casualty wants resolved in this declaratory judgment action, *Staton's* interests, not Atlantic Casualty's interests, are aligned with Right Way's interests; that is, both Staton and Right Way want Staton's personal injury claims to be covered by the higher liability limit. *See Ferraro v. Humphrey*, No. 2:14-CV-396-TLS, 2015 WL 685886, at *4 (N.D. Ind. Feb. 18, 2015) (citing case law where interests of the insured and the insured's victim align in suit against insurer). Conversely, Atlantic Casualty's interests in this case conflict with all three named defendants--Staton, Right Way, and Altaharwah. Indeed, although Right Way and Altaharwah have not taken any position on Staton's Motion, their joint answer to Atlantic Casualty's complaint (DE 17) demonstrates their opposition to Atlantic Casualty's claims, and thus their conflicting interests with those of Atlantic Casualty.[21] Right Way is properly aligned with Staton and Altaharwah, and, therefore,

---

[20] *See* footnote 29, *infra* (discussing case or controversy requirement).

[21] Staton points out that Right Way and Altaharwah are represented by the same counsel in this action, while they have separate counsel in the underlying action. He also points out that Atlantic Casualty is paying for their separate representation in the underlying action. (DE 26 at 5 & n.1). Staton professes not to "understand the legal strategies of counsel for" those three parties. (DE 26 at 5). This cryptic comment presumably relates to Atlantic Casualty having filed this lawsuit against parties for whose defense it is paying in the state court litigation. The existence of potential conflicts of interest between and among insurers and insured in situations in which the insured is sued by a third party and coverage is or may be in dispute is well recognized in the case law. *See, e.g., Armstrong Cleaners, Inc. v. Erie Ins. Exchange,* 364 F. Supp. 2d 797, 805-10 (S.D. Ind. 2005). That such

the fact that the three defendants are all citizens of Indiana does not defeat this Court's diversity jurisdiction.

## II.   DISCRETION TO DECLINE JURISDICTION UNDER THE DECLARATORY JUDGMENT ACT

Having established that there is diversity jurisdiction over this lawsuit, the Court turns to Staton's argument that the Court should abstain from exercising its jurisdiction because of the pending underlying litigation in state court. Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Nevertheless, under the doctrine of abstention, in "the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest," a district court "may decline to exercise or postpone the exercise of its jurisdiction." *Id.* at 813. "The Supreme Court has recognized four principal categories of abstention[.]" *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1071 (7th Cir. 2018). Staton mentions three

---

potential conflicts of interest exist does not have any bearing on the realignment issue before the Court. *See Zausa v. Zausa*, 754 F. App'x 427, 431 (7th Cir. 2018) ("Salem's continued obstinance about how the parties' interests relate is either a failure to see or a refusal to accept reality."); *Mut. Serv. Cas. Ins. Co. v. Country Life Ins. Co.*, 859 F.2d 548, 551-52 (7th Cir. 1988) (holding that an insured is not estopped from asserting a defense of noncoverage in a separate declaratory judgment action where it paid for defense costs in an action against the insured under a reservation of rights) (applying Illinois law).

of those: (1) *Burford* abstention;[22] (2) *Colorado River* abstention;[23] and (3) *Wilton/Brillhart* abstention.[24] *See* (DE 21 at 6; DE 26 at 6).

### A.   BURFORD

To start, Staton's passing reference to the *Burford* doctrine (DE 26 at 6) is insufficient to raise that issue. *See Diamond v. Chuley*, 811 F. Supp. 1321, 1335 (N.D. Ill. 1993) (a "skeletal argument, unsupported by relevant authority or reasoning . . . does not sufficiently raise the issue to merit the court's consideration") (internal quotation marks and citation omitted).

Even if the Court were to consider *Burford* abstention notwithstanding Staton's waiver, it is difficult to see how the facts of this case could possibly satisfy that doctrine. *Burford* abstention is invoked when deference to a parallel proceeding is justified by "difficult questions of state law that implicate significant state policies," or where "concurrent federal jurisdiction would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 504 (7th Cir. 2011) (internal quotation marks and citations omitted). The first prong of *Burford* abstention is not satisfied where, as here, the case involves "[t]he interpretation of a contract [that] would not 'transcend the result' of [the] case or likely affect anything other than the rights of these parties." *Ray v. Raj Bedi*

---

[22] *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).

[23] *See Colo. River Water Conservation Dist.*, 424 U.S. at 819-20.

[24] *See Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).

*Revocable Tr.*, __ F. Supp. 3d ___, No. 3:19-cv-711-DRL-MGG, 2020 WL 1184755, at * 4 (N.D. Ind. Mar. 11, 2020). The second prong is not satisfied where, as here, there is no "special forum" that would apply to the claims at issue. *Id.*

Staton apparently believes *Burford* abstention is implicated in this case because interpretation of an insurance policy is a question to which state law applies. But "[t]he mere fact that the outcome of the case is governed by state law does not warrant dismissal--to hold otherwise would undermine the purpose and reach of federal diversity jurisdiction." *Gonzalez v. Cruz*, 926 F.2d 1, 5 (1st Cir. 1991). Absent a showing of "an unsettled question of state law or important policy issue implicated by the coverage claim[][,] . . . there is little reason for a federal court to be reluctant about deciding [a] case" merely because it requires resolution of a question of state law. *Kelly*, 868 F.3d at 288 n.13; *see also Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 378 (4th Cir. 1994) ("[W]e do not think there is a compelling state interest in having the particular issues raised in this federal declaratory action decided in the state courts.").

### B.   *COLORADO RIVER*

The only case Staton cites for his *Colorado River* argument is a 40-year-old decision of a Wisconsin district court, and the law most certainly has evolved since then. *See* (DE 21 at 7-9 (citing *Ohio Cas. Co. v. Jackson Cnty. Bank*, 562 F. Supp. 1165 (W.D. Wis. 1983))).

In addition, Staton assumes, without argument or support (DE 21 at 7), that this action satisfies the first prong of the test for *Colorado River* abstention--the requirement that the two actions be "parallel." *See Interstate Material Corp. v. City of Chicago,* 847 F.2d 1285, 1287 (7th Cir. 1988) (*Colorado River* doctrine is "inapplicable" if the parallel

proceedings requirement is not satisfied); *see also Med. Assurance Co. v. Helman*, 610 F.3d 371, 378 (7th Cir. 2010) (same). "A suit is 'parallel' when substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Interstate Material Corp.*, 847 F.2d at 1288 (internal quotation marks and citation omitted). The Court questions whether a "parallel" proceeding argument could be made here given that, as discussed earlier, Indiana law does not permit the injured party to join the insurer directly in the underlying lawsuit. *See, e.g., Kelly*, 868 F.3d at 287 (holding that underlying tort action and declaratory judgment suit to determine coverage issue arising out of the underlying tort action are not "parallel actions"); *Adams v. West Ben. Mut. Ins. Co.*, No. 92 C 20359, 1993 WL 114558, at *3 (N.D. Ill. Apr. 5, 1993).[25] But in any case, Staton does not attempt to make the argument, so the issue is waived. *See Diamond,* 811 F. Supp. at 1335.

Finally, the Court notes that the standard for *Colorado River* abstention is more stringent than the standard applicable to a decision to decline declaratory judgment jurisdiction under *Wilton/Brillhart. See Kelly*, 868 F.3d at 285 n.10 ("although tests for employing both [*Colorado River* and *Wilton/Brillhart* abstention doctrines] require evaluating similar factors, the district court's discretion under the [Declaratory Judgment Act] is significantly greater than under *Colorado River*" (internal quotation marks and

---

[25] *See also Runk*, 2009 WL 3256806, at * 1 (in declaratory judgment action filed by injured parties against insurance company to declare rights under insurance policy, court uses the term "parallel state court proceeding" to refer to a declaratory judgment suit previously filed by the insurer against its insured and the injured parties for a declaration of non-liability under the policy, rather than to refer to the underlying action in which the injured parties had sued the insured who allegedly caused the injuries).

citation omitted)). Therefore, even if Staton had not waived his *Colorado River* argument, it is highly unlikely he could prevail under that doctrine given the Court's conclusions in this opinion regarding *Wilton/Brillhart* abstention, to which the Court now turns.

### C.   *WILTON/BRILLHART*

The *Wilton/Brillhart* doctrine applies when the lawsuit involves declaratory relief. Abstention in the declaratory relief context stems from the statutory language, rather than any judicially created doctrine. *See Med. Assurance Co.*, 610 F.3d at 378 (clarifying that "abstention" is not an entirely accurate term to describe the *Wilton/Brillhart* doctrine, since abstention "normally refers to a group of judicially-created doctrines," and discretion under *Wilton/Brillhart* stems from the Declaratory Judgment Act). The Declaratory Judgment Act provides, in relevant part, that "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). "By its terms (in particular, 'may'), the [Declaratory Judgment] Act grants the district court 'wide discretion' in deciding whether or not to exercise this authority." *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995).

That discretion, however, "is not [ ] unbridled." *Sears, Roebuck & Co. v. Zurich Ins. Co.*, 422 F.2d 587, 588 (1970). *Wilton* and *Brillhart* emphasize that a primary justification for declining to exercise jurisdiction for purposes of declaratory relief is to avoid the "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation." *Billhart*, 316 U.S. at 495. While the fact that there is a pending state court

lawsuit is neither necessary nor sufficient for the doctrine to be applied,[26] typically it is of critical importance to the district court's decision. *See, e.g., Kelly*, 868 F.3d at 282 (noting that the presence or absence of a pending state proceeding is "significant" factor in a court's determination of whether to exercise jurisdiction over a declaratory judgment action). The question for the Court, therefore, is whether it should decline to exercise federal court jurisdiction over Atlantic Casualty's declaratory judgment suit given that there is a pending state court action in which Right Way's and Altaharwah's liability to Staton will be determined.

### 1.    FACTORS GUIDING DISCRETION TO DECLINE JURISDICTION

The Seventh Circuit set out the factors that should guide a district court's decision whether to exercise jurisdiction in a declaratory judgment case in *Nationwide Insurance v. Zavalis*. Those factors include:

> whether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time.

52 F.3d at 692.

---

[26] *See Med. Assur. Co.*, 610 F.3d at 379 (stating that, "[e]ven if there is no parallel proceeding, the district court still has discretion to decline to hear a declaratory judgment suit," while, at the same time, the question of whether to abstain "is broader than a simple inquiry into whether" there is another pending lawsuit).

Like the declaratory suit in *Zavalis*, this declaratory judgment action "presents a dispute that is fundamentally distinct from the matters before the state court." *Id.* In the state court case, Staton seeks to establish the liability of Altaharwah and Right Way for his injuries. In the federal forum, by contrast, Atlantic Casualty (which is not a party to the state suit) seeks to resolve an issue related to its obligation to indemnify Right Way under the insurance policy, an issue not before the state court. *See id.* at 692-93; *see also Kelly,* 868 F.3d at 287 ("the issues involved in the state and federal lawsuits--the extent of the company's liability to the injured persons and the extent of coverage owed by the insurer to the company, respectively--[are] distinct." (citing cases from the Third, Fourth, Sixth, and Eighth Circuits); *Allstate Vehicle & Prop. Ins. Co. v. Richardson*, No. 3:18-cv-204-PPS-MGG, 2019 WL 2138573, at *4 (N.D. Ind. May 15, 2019) (holding that dismissal of declaratory judgment action was "not required or necessary" under similar facts).

Staton characterizes as "legally indistinguishable from this action" two older cases from outside this district where the courts abstained in a declaratory judgment action. (DE 21 at 5). In both cases, however, the plaintiff in the declaratory judgment suit was a named defendant in the other pending litigation, and one of the issues before the court in that other litigation was whether the plaintiff was required to indemnify the defendant. *See Nat'l Fire Ins. Co. v. Milwaukee Metro. Sewerage Dist.*, 680 F. Supp. 1291, 1292 (E.D. Wis. 1988); *Ohio Cas. Co.*, 562 F. Supp. at 1166-67. As a result, the state court action in those cases "fully addresse[d] the issues presented . . . and provide[d] for a complete resolution of the controversy." *National Fire Ins.*, 680 F. Supp. at 1292; *see also Ohio Cas. Co.*, 562 F. Supp. at 1170 ("the whole controversy may be heard in contemporaneous state court

proceedings"). Unlike the lawsuits in *National Fire* and *Ohio Casualty*, the state court litigation will *not* fully resolve the issues in this proceeding, because Atlantic Casualty is not a party and the scope of liability insurance coverage is not at issue in that proceeding.

To get around this difference, Staton argues that Atlantic Casualty could seek to intervene in the state court action to protect its rights. (DE 26 at 7). But Staton has not shown that an Indiana court would allow an insurer to intervene. As discussed previously, Indiana does not allow direct actions, which suggests that the insurer's intervention in the underlying proceeding very well may not be allowed.[27] Thus, it is quite likely some separate state court proceeding would be required to resolve the issues Atlantic Casualty raises here. And "the Court sees no reason to assume that dismissing [Atlantic Casualty's] federal declaratory judgment action in favor of the available state court alternatives would be more efficient than allowing [those] claims to proceed."

---

[27] *See Nautilus Ins. Co.*, 15 F.3d at 379 (court could not "say that the issues raised in this declaratory action can more efficiently be resolved in the pending state proceedings" where it was "not clear . . . that the insurers can be brought into those actions at this point"); *Navigators Specialty Ins. Co. v. Rural King Supply, Inc.*, No. 19-cv-3154, 2021 WL 1199025, at *4 (C.D. Ill. Mar. 20, 2021) (observing that in Wisconsin, a state that allows direct actions, where disputes arise over insurance coverage for the tort claims being litigated and the insurer is not already named as a defendant, "the 'preferred procedure' … is for the insurer to intervene and request a bifurcated trial so that the issue of coverage can be resolved before the issue of liability," but pointing out that Illinois is not a direct action state and therefore "[t]his procedure is not available"); *see also Granite State Ins. Co. v. Lodholtz*, 981 N.E.2d 563, 566 (Ind. Ct. App. 2012) (holding that trial court properly found that insurer's interest in an action between its insured and the injured party was "contingent and insufficient to support intervention"); *but see Vernon Fire & Cas. Inc. Co. v. Matney*, 170 Ind. App. 45, 51, 351 N.E.2d 60, 64 (1976) (holding "that the insurer has the right to intervene and have a full and complete adjudication of all the issues at a single trial").

*Navigators Specialty Ins. Co.*, 2021 WL 1199025, at *4. "Arguably, settling the dispute [here] will *avoid* duplicative litigation, considering that the parties have already begun to litigate the issue of coverage in the federal forum." *Kelly*, 868 F.3d at 289 (emphasis in original); *see Nautilus Ins. Co.*, 15 F.3d at 379 ("It is difficult to imagine a less efficient use of judicial resources than dismissing this [declaratory judgment] action" merely because "the issues raised here might be resolved in some yet-to be filed action brought in state court—either another action for declaratory relief or an action for indemnity after entry of judgment").

In any event, concerns about "[d]uplication and inefficiency are not enough to support a federal court's decision to bow out of a case over which it has jurisdiction." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 13 (1st Cir. 1990). The Court must also consider the purposes served by the Declaratory Judgment Act. First, there is the issue of timing. "In both *Brillhart* and *Wilton*, . . . state court proceedings had already reached the garnishment stage and featured insurance coverage as an issue and the insurer as a party." *Kelly*, 868 F.3d at 284 n.9. Here, if the coverage limits issue were to be resolved in the state action, it would more than likely be in a supplemental proceeding filed after tort liability for Staton's injuries has been established. *See, e.g., Davis v. Carey*, 149 F. Supp. 2d 593, 600-01 (S.D. Ind. 2001). Requiring Atlantic Casualty to wait until after Right Way's liability to Staton is established runs counter to the purpose of the Declaratory Judgment Act, which is to allow federal courts to efficiently resolve disputes by "an early adjudication of the rights of the parties." *Med. Assurance Co.*, 610 F.3d at 377. "Declaratory judgments allow parties prospectively to settle concrete questions concerning their legal rights and duties; foreclosing that remedy because the questions

*may* eventually be answered in another forum undermines the utility of the declaratory

action." *Kelly*, 868 F.3d at 286 (emphasis in original). The coverage issue[28] is currently

ripe[29] for review. The insurer "should [not] be forced into a waiting period of legal

uncertainty respecting the obligations it has incurred in its policy." *Sears, Roebuck & Co.*,

422 F.2d at 590; *see also Kelly*, 868 F.3d at 283 (disagreeing that a district court should

"decline to entertain the insurer's declaratory judgment action because the issue of a

---

[28] Staton asserts that "there is no coverage issue. The only issue is the amount of the policy limit." (DE 26 at 7). In the Court's view, an issue over the amount of the Policy is a "coverage issue." The Court agrees, however, that there appears to be no question that Atlantic Casualty will have a duty to indemnify if Staton is successful on his tort claims, with the only issue being the limit applicable to that indemnification duty.

[29] Staton does not question the ripeness of Atlantic Casualty's declaratory judgment suit. Nevertheless, ripeness has a subject matter jurisdiction component to it, *see Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995) (Declaratory Judgment Act does not dispense with the Article III case or controversy requirement), and therefore the Court considers the issue sua sponte. Pursuant to Seventh Circuit precedent, "a real disagreement" regarding the limits of insurance coverage, even though contingent on the injured party obtaining a judgment against the insured, is sufficient to satisfy Article III's case and controversy requirement. *See Bankers Trust Co.*, 959 F.2d at 681; *see also Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377-79 (7th Cir. 2019). Thus, the Court's subject matter jurisdiction over this action is secure. However, the Seventh Circuit has cautioned that, from a discretionary standpoint, a suit to determine an insurer's obligations to indemnify its insured generally is premature until the insured has been determined to be liable to somebody. *See Med. Assur. Co.*, 610 F.3d at 375 (noting that the insurer's duty-to-indemnify claim would "not be ripe [in the discretionary, rather than case or controversy sense] until liability has been established" (citing *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (collecting cases))); *see also Argento v. Village of Melrose Park*, 838 F.2d 1483, 1492 (7th Cir. 1988). Still, this is "a general rule rather than an absolute one." *Bankers Tr. Co.*, 959 F.2d at 680. For the reasons discussed above, an early determination regarding the limits of liability will serve a useful purpose and should be delayed only if, as will be discussed in the next section, it turns on a factual issue at the heart of the state action.

defendant's insurance coverage eventually could arise in an underlying state negligence action").

Declaratory relief in cases such as this serves the useful purpose of clarifying and settling the dispute regarding the insurer's obligations under the insurance policy. *See Kelly*, 868 F.3d at 288. Clarifying the liability limits issue through this declaratory judgment action is particularly likely to serve a useful purpose in this case. The Seventh Circuit has said that the "utility of judicial advice is . . . pertinent to the district court's exercise of equitable discretion." *Bankers Tr. Co.*, 959 F.2d at 682. Further, the Seventh Circuit said, it "is for the district judge to decide in the first instance" whether the better approach is "to hold off resolving the dispute between the [insured] and the insurer until it is clearer that that dispute will not become moot," i.e., by a state court judgment in the underlying action against Staton, or whether "to accelerate the resolution of th[e] case in order to facilitate a settlement of the other one." *Id.* It is true that trial in the underlying state court action is currently scheduled to begin in August 2022, and a finding of no liability as to Right Way and Altaharwah in that action would moot the issue here regarding the limit of liability for which Atlantic Casualty would have a duty to indemnify. But there is a significant difference between a liability limit of $25,000 and a liability limit of $350,000. It is this significant difference that is likely the reason Atlantic Casualty chose to incur the expense of this declaratory judgment action rather than wait to see if Staton succeeds on his tort claims thereby triggering its duty to indemnify. The Court concludes that in these circumstances, the retention of jurisdiction and the

determination of the liability limits under the Policy would serve the useful purpose of providing clarity and possibly facilitating settlement in the state court litigation.

2.    THE PERSONAL USE/SCOPE OF EMPLOYMENT ISSUE

The Seventh Circuit has said that the "classic example" for declining federal jurisdiction under the *Wilton/Brillhart* doctrine is when "an action pending in state court between the same parties will answer 'the same precise legal question.'" *Amling,* 943 F.3d at 380 (quoting *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986–87 (7th Cir. 2010))). Staton suggests that is the situation here. That is, Staton points out that Right Way filed a motion for summary judgment in the underlying action in which it argued, among other things, that Staton's respondeat superior liability theory of recovery against Right Way failed as a matter of law because Altaharwah was not acting within the scope of his employment when the accident occurred. (DE 21 at 2). Staton notes that the state court denied Right Way's summary judgment motion. He contends that this action for declaratory relief seeks "to contradict[ ]" the state court summary judgment order by asking "this Court find that [Altaharwah] was using the Right Way Auto for personal use." (*Id.* at 3).

It is true that Atlantic Casualty filed this lawsuit about 7 months after the state court denied Right Way's summary judgment motion. But the complaint does not request a declaration regarding the legal question, which is before the state court, whether Altaharwah was acting within the scope of his employment at the time of the accident for purposes of holding Right Way liable under respondeat superior principles. Nevertheless, the implication of Staton's argument is that a declaration that the Policy

has a coverage limit of $25,000 will require litigation of the same scope of employment issue before the state court. The problem is that he has not adequately explained how that is the case.

Resolution of the liability limits at issue in this case requires consideration of the factual basis of the claims being made against the insured, Right Way, and the terms of the Policy. Thus, to show that the same legal issue will be resolved in this action as in the state case, Staton must point to the Policy language that will determine the liability limits issue and demonstrate that language turns on a legal issue that is before the state court, such as the respondeat superior liability question. Staton has not done that. Instead, he points to the Endorsement to the Policy, and asserts in a conclusory manner that it applies if the vehicle was being driven for "personal use." The Endorsement, however, simply states that "[l]iability [l]imits are reduced to the financial responsibility limit of the state where the 'accident' occurs if the driver is not shown in the Schedule above." DE 1-1 at 42. Focusing solely on the language of the Endorsement without regard to any other Policy language, the limit arguably applies in this case simply because Altaharwah's name does not appear on the Schedule, regardless of the reasons for Altaharwah's use of the vehicle. If that interpretation is correct, no issue before the state court would be implicated by this Court's resolution of the liability limits issue. Right Way and Altaharwah assert as an affirmative defense to Atlantic Casualty's declaratory judgment complaint that the Endorsement is invalid for various reasons. (DE 17 at 5-6). If the only issue to resolve the current dispute as to the liability limits is whether the Endorsement

is valid, then it is difficult to see how a ruling by this Court would contradict the state court's summary judgment ruling.

Staton's contrary interpretation of the Endorsement, i.e., that it applies only if Altaharwah's use of the vehicle can be characterized as "personal," presumably is based on the Endorsement's title, which is where the term "personal use" appears. *See* (DE 1-1 at 42 ("Limitation--Furnished Autos For Personal Use"). But the Court cannot determine the meaning of the Policy just by looking at the Endorsement's title. *See, e.g., Conagra, Inc. v. Arkwright Mut. Ins. Co.*, 64 F. Supp. 2d 754, 764 (N.D. Ill. 1999) (finding disputed issues of fact precluded summary judgment where insured argued that, "despite the title of the endorsement," coverage provided by "Ocean Cargo Endorsement" was "not limited to losses incurred in the course of ocean voyages").[30] And, even if the Endorsement does apply only when the vehicle is being used for "personal" reasons, Staton fails to provide legal argument or support for his apparent assumption that the *contractual* question of whether the accident involved a "personal use" of the vehicle is resolved by reference to Indiana respondeat superior law.

---

[30] *See also Pine Bluff Sch. Dist. v. ACE Am. Ins. Co.*, 402 F. Supp. 3d 548, 561 (E.D. Ark. 2019) (interpreting insurance policy that included provision stating that "[t]he titles and headings to the various parts, sections, subsections[,] and endorsements of the Policy are included solely for ease of reference," and "do not in any way limit, expand[,] or otherwise affect the provisions of such parts, sections, subsections[,] or endorsements"), *aff'd*, 984 F.3d 583 (8th Cir. 2020); *Beaufort Rentals LLC v. Westchester Fire Ins. Co.*, No. 9:18-CV-02658-DCN, 2018 WL 6248770, at *4 (D.S.C. Nov. 29, 2018) (holding that "there is nothing in the endorsement to suggest that the exclusions it contains only apply to property management," notwithstanding the title "Property Manager and Real Estate").

"Indiana courts interpret an insurance contract under the same rules of construction as other contracts. Courts interpret an insurance policy with the goal of ascertaining and enforcing the parties' intent as revealed by the insurance contract." *Cont'l Ins. Co. v. George J. Beemsterboer, Inc.*, 148 F. Supp. 3d 770, 780 (N.D. Ind. 2015) (internal quotation marks and citations omitted). While no party appears to dispute that the accident in question is covered under the Policy, the Court cannot interpret the Endorsement in a vacuum, without reference to the applicable Policy language that would otherwise provide for a $350,000 limit if the Endorsement did not apply. Staton only points to the part of the Policy that contains the $25,000 liability limit without explaining the Policy language that it purportedly limits. For the Court to rule in favor of Staton, it would have to "build[ ] an argument on [his] behalf from the ground up, which is not the Court's role." *Tomsheck v. Town of Long Beach,* No. 3:17-CV-120 JD, 2019 WL 3778690, at *3 (N.D. Ind. Aug. 12, 2019). "It is not the obligation of th[e] court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) (internal quotation marks and citation omitted). Staton may be correct in his interpretation of the Endorsement, but if so, it is "his duty to explain why, and he did not do so." *Tomsheck*, 2019 WL 3778690, at *3.

That having been said, Atlantic Casualty admits there could be some *factual* overlap between the liability limits issue in this case and the respondeat superior liability question before the state court. Although the Court cannot say for certain, Atlantic

Casualty suggests that the factual overlap arises as a result of a provision in the Policy that discusses "dealer operations," rather than the "personal use" Endorsement:

> The issue in this declaratory judgment action is to determine the extent of Atlantic Casualty's policy as it pertains to Right Way and Altaharwah, given the circumstances under which he was driving the Right Way automobile and whether the accident resulted from dealer operations. One issue in the State Court Action is whether Altaharwah was acting within the scope of his employment at the time of the motor vehicle accident. While this may involve similar facts, these are two separate issues before both courts.

(DE 25 at 11-12).

Atlantic Casualty appears to be referencing a provision in the "General Liability Coverages" section of the Policy where the term "dealer operations" is used. The provision in question defines an "insured" covered by the Policy as including "[Right Way's] employees . . ., but only for acts within the scope of employment by [Right Way] or while performing duties related to the conduct of [Right Way's] 'auto dealer operations'." (DE 1-1 at 64 (Policy, Section II, D(5))). Atlantic Casualty fails to acknowledge that the provision it is referencing also uses the term "scope of employment." Atlantic Casualty argues that the issue of whether the accident resulted from dealer operations within the meaning of the Policy is distinct from the issue of whether Altaharwah was acting within the scope of his employment under state respondeat superior law. But Atlantic Casualty does not explain how the concept in the same Policy provision of "acts within the scope of employment by [Right Way]" differs, if it does differ, from the scope of employment inquiry under Indiana respondeat superior law.

33

In addition, Atlantic Casualty fails to address the issue of comity and policy considerations favoring deference to state court proceedings where there are overlapping factual issues. *See* (DE 25 at 12 (arguing only that overlapping factual issues do not implicate the concern over piecemeal litigation because the legal issues before this Court and the state court are different). On the issue of comity, the Seventh Circuit has explained that, "[w]hen the underlying facts and the nature of the insured's conduct are disputed, the court presiding over the declaratory action typically cannot decide [the coverage issue] . . . without resolving disputes that should be left to the court deciding the underlying tort action." *Zavalis*, 52 F.3d at 694.[31]

The mere existence of overlapping factual issues, however, is not a sufficient reason to abstain. Rather, to "warrant[ ] a court's abstention," the insurance coverage issue must "rely on questions *central to* the underlying liability proceeding." *Kelly*, 868 F.3d at 287 n. 12 (emphasis added); *see Zavalis*, 52 F.3d at 693 (affirming the district court's decision not to reach the matter of the insurer's duty to indemnify because "resolution of

---

[31] The cases cited by Atlantic Casualty in arguing against abstaining in this matter mostly involve declaratory judgments regarding the duty to defend. *See Med. Assurance Co.*, 620 F.3d at 381; *Mut. Serv. Cas. Ins. Co.*, 859 F.2d at 553; *Sears, Roebuck & Co.*, 422 F.2d at 589. On the issue of overlapping facts, those cases are distinguishable because resolution of the insured's duty to defend "is most often determined primarily, if not exclusively, from the face of the underlying complaint against the insured," *Zavalis*, 52 F.3d at 693, which means the court in those cases had "no reason to immerse itself in the facts surrounding the incident in question," *id.* at 694. The only case Atlantic Casualty cites that decides an indemnification question, as opposed to a duty to defend issue, is *Auto-Owners Insurance Co. v. Munroe*, 614 F.3d 322 (7th Cir. 2010). But there the insurer filed a declaratory judgment action after the injured parties had settled the underlying claims, *id.* at 324, so that case also did not present any concerns over overlapping factual issues with the state court action.

that duty would necessarily require [the district court] to address a factual question *at the heart of* the [injured party's] state court action") (emphasis added).[32] Deference to the state proceedings would not be required, for instance, "where the underlying circumstances are either undisputed or, in light of previously established facts, beyond dispute." *Zavalis*, 52 F.3d at 694. In those circumstances, "a court may be able to make a ready determination as to the insured's actual conduct." *Id.*; *see also Richardson,* 2019 WL 2138573, at *4.

The Court's general impression is that the underlying facts related to Altaharwah's use of the vehicle in question are undisputed. If that impression is accurate, the potential for making conflicting findings in this case would arise if at all only as to how those undisputed facts are characterized, i.e., do they show "personal use," or that Altaharwah was acting "within the scope of his employment," or that he was performing duties related to Right Way's auto dealer operations. Even then, the comity issue turns on how

---

[32] *See also Scottsdale Ins. Co. v. City of Waukegan*, No. 13-cv-03088, 2014 WL 3600517, at * 2 (N.D. Ill. July 21, 2014) (applying Illinois law to decide that declaratory judgment suit brought by an insurer should not be used as a vehicle to preempt factual findings that would otherwise be made in the underlying litigation); *Snodgrass v Baize*, 405 N.E.2d 48, 55 (Ind. Ct. App. 1980) ("it has been held that a declaratory judgment [to determine the insurer's obligation] is not appropriate if the question involved would be, as here, fully resolved in the tort action" (citing *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 405, 347 A.2d 842, 848 (1975) ("A declaratory judgment action prior to the trial of a tort action against the insured may be a valuable means of resolving questions of policy coverage where those questions are independent and separable from the claims asserted in the pending suit by an injured third party."), and *Thompson v. Med. Licensing Bd*, 180 Ind. App. 333, 344, 389 N.E.2d 43, 50 (1979) (holding that declaratory relief "should not be used to usurp or replace" a decision to be made in an already pending administrative proceeding))); *but compare Higgins v. State Farm Fire & Cas. Co.*, 894 So. 2d 5, 8 (Fla. 2004) (approving of declaratory judgment suits as a vehicle for resolving fact issues deciding the existence of insurance coverage, even if those factual issues are before the court in the underlying lawsuit).

a conflicting finding on any of those questions would impact the state court litigation, which might depend on whether the policy language was identical to the applicable tort law, including respondeat superior, or whether there was a reason to construe the contract terms differently given contract law. The overlapping questions may be mixed questions of law and fact, the resolution of which in this proceeding may or may not have an effect on the state court proceeding. That neither party has addressed what turns out to be the ultimate question for deciding whether abstention is appropriate is fatal to Staton's Motion. The only basis for this Court to abstain in this matter would be if resolution of the liability limits issue under the Policy would interfere with resolution of the respondeat superior liability issue in the state court proceeding. The Court declines to abstain from exercising its jurisdiction over this matter because Staton has not met his burden to demonstrate such interference. But the Court is open to revisiting the issue in the form of an argument for issuing a stay if it becomes apparent at some later point in these proceedings that the Policy interpretation question to be resolved in this case involves a factual or legal issue that is pending before the state court. *Cf. Day*, 862 F.2d at 657 (considering overlap in state and federal proceedings that arose after initial stay decision was made, as basis for abstaining under *Colorado River*).[33]

---

[33] Abstaining in this litigation in deference to resolving disputed facts or mixed questions of law and fact in the first instance in the state court proceeding would not prejudice Atlantic Casualty's right to relitigate overlapping issues on which the liability limits question turns so long as it is defending the insureds in the state court proceeding under a reservation of rights. *See State Farm Fire & Cas. Co. v. T.B. ex rel. Bruce*, 762 N.E.2d 1227, 1231 (Ind. 2002) (holding that an insurer who is defending the insured in the underlying state action under a reservation of rights will not be collaterally estopped by factual

## CONCLUSION

For the reasons discussed above, Staton's Motion to Dismiss **(DE 20)** is **DENIED**.

The Court also reaffirms its previous ruling from the bench regarding Atlantic Casualty's

Motion to Strike **(DE 27),** which is **DENIED** as to the request to strike the new arguments

in Staton's reply brief, and **GRANTED** as to the request to file a surreply.

So ORDERED this 29th day of March, 2022.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT

---

findings in that action); *see also Selective Ins. Co. of Am. v. Smiley Body Shop, Inc.*, 260 F. Supp. 3d 1023, 1038 n.8 (S.D. Ind. 2017); *Snodgrass*, 405 N.E.2d at 51-53.